UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUSTIN C. McKNIGHT,                                    Case No. 11-13376

        Plaintiff,                              Victoria A. Roberts
v.                                                     United States District Judge

COMMISSIONER OF SOCIAL SECURITY,        Michael Hluchaniuk
                                                       United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 15)**

I.    **PROCEDURAL HISTORY**

    A.    <u>Proceedings in this Court</u>

On August 3, 2011, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Victoria A.

Roberts referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability,

disability insurance and supplemental security income benefits.  (Dkt. 3).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 10, 15).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on April 9, 2009, alleging that he became

unable to work on November 1, 2008.  (Dkt. 8-5, Pg ID 140-141).  The claim was

initially disapproved by the Commissioner on November 4, 2009.  (Dkt. 8-4, Pg

ID 91-95).  Plaintiff requested a hearing and on September 27, 2010, plaintiff

appeared with counsel before Administrative Law Judge (ALJ) Teresa L. Hoskins

Hart, who considered the case *de novo*.  In a decision dated January 24, 2011, the

ALJ found that plaintiff was not disabled.  (Dkt. 8-2, Pg ID 33-46).  Plaintiff

requested a review of this decision on March 9, 2011.  (Dkt. 8-5, Pg ID 138).  The

ALJ's decision became the final decision of the Commissioner when, after the

review of additional exhibits[1] (Dkt. 8-2, Pg ID 30-31), the Appeals Council, on

July 27, 2011, denied plaintiff's request for review.  (Dkt. 8-2, Pg ID 26-29);

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

　　For the reasons set forth below, the undersigned **RECOMMENDS** that the

plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's

motion for summary judgment be **GRANTED**, and that the findings of the

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Report and Recommendation
Cross-Motions for Summary Judgment
*McKnight v. Comm'r*; Case No. 11-13376

Commissioner be **AFFIRMED**.

II.     **FACTUAL BACKGROUND**

        A.      <u>ALJ Findings</u>

        Plaintiff was 38 years of age at the time of the most recent administrative

hearing.  (Dkt. 8-5, Pg ID 140).  Plaintiff's relevant work history included work as

a press operator and flooring installer.  (Dkt. 8-2, Pg ID 44).  In denying plaintiff's

claims, defendant Commissioner considered major depressive disorder and panic

disorder as possible bases of disability.  (Dkt. 8-2, Pg ID 38).

        The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

November 1, 2008.  (Dkt. 8-2, Pg ID 38).  At step two, the ALJ found that

plaintiff's mood disorder without psychosis and anxiety disorder with panic

attacks were "severe" within the meaning of the second sequential step.  *Id*.  At

step three, the ALJ found no evidence that plaintiff's combination of impairments

met or equaled one of the listings in the regulations.  (Dkt. 8-2, Pg ID 39).  At step

four, the ALJ found that plaintiff could not perform his previous work as a

flooring installer and a press operator.  (Dkt. 8-2, Pg ID 44).  At step five, the ALJ

denied plaintiff benefits because plaintiff could perform a significant number of

jobs available in the national economy.  (Dkt. 8-2, Pg ID 45).

B.   <u>Plaintiff's Claims of Error</u>

Plaintiff argues that the ALJ's finding that he could perform unskilled work with no contact with the public is not supported by substantial evidence.  Plaintiff points to his ongoing psychiatric history and treatment for depression, anxiety, and panic attacks in support of his claimed inability to work.  Plaintiff asserts that the ALJ's conclusion that plaintiff had moderate difficulties with social functioning and mild difficulties with concentration, persistence, and pace are contrary to the findings in the Psychiatric Review Technique Form (PRTF).  Plaintiff points to the psychologist's conclusion that he had moderate restrictions of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, and pace.  (Tr. 244).  Plaintiff also contends that the ALJ's conclusions are contrary to the "numerous office notes and records cited in the medical section of this brief."

Plaintiff also finds fault with the ALJ's decision to give less weight to the state agency medical examiner, who is a highly qualified expert.  According to plaintiff, the ALJ impermissibly substituted his own medical judgment for that of the consulting psychologist, Dr. Michelle Rousseau.  (Tr. 227-232).  Plaintiff also contends that the ALJ improperly relied on medical evidence from 2006-2007, when plaintiff's disability onset date was November 1, 2008.  According to plaintiff, his condition prior to this date is irrelevant.

Next, plaintiff claims that the ALJ improperly discounted his credibility by imposing an improper requirement that the limited nature of his activities of daily living could not be "objectively verified." Plaintiff also asserts that the ALJ improperly discounted his credibility because he had been discharged from treatment on several occasions for missing appointments. According to plaintiff, the ALJ should have considered the reasons for the missed treatment, including that he could not afford treatment.

Plaintiff also contends that the plaintiff's mental impairments prevent him from working on a full-time basis because he would miss more than 2-3 days per month of working, which precludes competitive employment. Finally, plaintiff argues that the ALJ failed to pose complete and accurate hypothetical questions to the vocational expert. Specifically, plaintiff asserts that the ALJ should have included in the hypothetical question all 12 of the limitations identified in the summary conclusions section of the PRTF, in order to accurately reflect plaintiff's limitations. (Tr. 248-249).

C.     The Commissioner's Motion for Summary Judgment

The Commissioner contends that the ALJ's decision is supported by reports of the consultative examiner and state agency psychologist, plaintiff's failure to remain in treatment, the ALJ's negative assessment of plaintiff's credibility, and positive objective medical evidence. For example, the examiner stated that

plaintiff applied "at least fair effort," communicated appropriately, and had good eye contact. (Tr. 230). While he was "at least moderately depressed and mildly anxious," his thought content was normal. (Tr. 230-31). He was able to repeat 6 digits forward, and 4 backward; he also could spell "house" forward and backward (Tr. 231). He answered abstract thinking questions and similarities/differences questions well, remarking that a cat and lion were alike because they were both felines. (Tr. 231). The examiner reported that plaintiff's concentration "may" have been at least mildly impaired. (Tr. 232). But he could "independently engage in a fair number of adaptive activities of daily living at this time" and could follow basic instructions fairly well. (Tr. 232). Although the psychologist reported that plaintiff "may" have moderate problems with social interaction, he appeared able to handle brief and superficial social interaction. (Tr. 232). The examiner assigned a Global Assessment of Functioning (GAF) score of 59, at the high end of the range indicating moderate symptoms and/or impairment (Tr. 232; Am. Psychiatric Assn., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text rev., 2000) (DSM-IV)).

The Commissioner points out that a state agency psychologist noted that plaintiff had mildly impaired concentration, but otherwise intact cognition. (Tr. 250). The psychologist also observed that plaintiff's social functioning was moderately impaired such that he would not work well with the public. (Tr. 250).

He "would work best alone or in small groups," but could perform "simple, routine tasks on a sustained basis." (Tr. 250). The Commissioner contends that both of these medical opinions are consistent with the ALJ's decision, and not with plaintiff's claim of disabling mental limitations. According to the Commissioner, plaintiff cites to no medical opinion — or even an opinion on a matter reserved to the Commissioner — that was both before the ALJ and that supports his claim of disabling mental limitations. Accordingly, the Commissioner urges the Court to conclude that the balance of the medical opinions in this case strongly supports the ALJ's decision.

The Commissioner also contends that the ALJ appropriately observed that plaintiff was noncompliant with treatment in 2007, and that the treating facility closed his case for lack of contact. (Tr. 17). In this same vein, the ALJ observed that plaintiff refused to take Prozac in 2008, despite evidence that taking medication helped with his symptoms. (Tr. 17). Further, the ALJ remarked that plaintiff had a series of no-shows and cancellations between November 2008 and December 2009, and that the clinic terminated plaintiff as a client after he repeatedly failed to show for appointments. (Tr. 17). Likewise, plaintiff was discharged in 2010 from the Pioneer Counseling Center for failure to keep appointments. (Tr. 17-18). According to the Commissioner, there is no evidence of a thought disorder or psychosis that would explain plaintiff's unwillingness to

seek and attend treatment.  Thus, the ALJ could reasonably draw an inference that plaintiff's failure to attend treatment for extended periods cast doubt on his allegations of disabling mental impairments.  According to the Commissioner, plaintiff does not identify any explanation that the ALJ failed to consider.  As for plaintiff's implication that he did not receive mental health services because he could not afford them, the Commissioner contends that the record is bereft of any evidence that would support such a conclusion and plaintiff points to none. Rather, the Commissioner asserts that the record demonstrates that plaintiff was repeatedly discharged for missing appointments and for failing to respond to contacts from his mental health providers.

Next, the Commissioner argues that the ALJ properly articulated several bases on which to doubt plaintiff's credibility.  Specifically, the ALJ observed that plaintiff's "testimony regarding his daily activities was rather vague."  (Tr. 18). The Commissioner points out that the ALJ, unlike the Court, had the ability to view and hear plaintiff while he was testifying, and her observations should be accorded great deference.  As the Seventh Circuit has observed, there may be "intangible and unarticulable elements which impress the ALJ, that, unfortunately leave no trace that can be discerned in [the] transcript."  *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999) (internal quotation marks omitted).  The Commissioner also points to other grounds articulated by the ALJ in support of her decision to

reject plaintiff's credibility.  Specifically, the ALJ observed that plaintiff complained of knee and hand pain, but that a consultative examiner failed to find any problems whatsoever of physical limitations or orthopedic problems (Tr. 18); the Commissioner maintains that this evidence suggests that plaintiff may have been presenting himself in a manner that overstated his impairments.  The ALJ also noted that the report of the consultative examiner did not support the severity of plaintiff's allegations.  (Tr. 19).  Under these circumstances, the Commissioner urges the Court to conclude that the ALJ's determination that plaintiff's complaints were less-than-fully believable is particularly salient.

Finally, the Commissioner points to the ALJ's observations that there was objective medical evidence in favor of a finding of non-disability.  For example, at a physical consultative examination, the consultative examiner remarked that while plaintiff appeared depressed, he was cooperative, had normal memory and concentration, and showed appropriate insight and judgment.  (Tr. 225).  And, although plaintiff claimed to the psychological consultative examiner that he was experiencing suicidal ideation "[a] lot" and was also experiencing homicidal ideation, the examiner documented solid performance on tests of concentration and memory.  (Tr. 230).  Further, in April 2010, a psychiatrist documented a mostly normal mental status examination.  Plaintiff was described as: alert, cooperative, normal in motor activities, oriented, normal in memory, normal in

general knowledge, normal in stream of thought and perception, and good in judgment. (Tr. 347-48). The psychiatrist assigned a GAF score in the middle of the moderate impairment/symptoms range. (Tr. 349). A therapy note the next month recorded plaintiff's mood as "mildly [d]epressed." (Tr. 343). The Commissioner acknowledges that plaintiff cites some clinical notes indicating that plaintiff's condition was more severe, but suggests that a closer analysis of those reports makes clear that, in almost all cases, the analysis was based on plaintiff's self-report rather than on objective evidence. Thus, given the ALJ's findings about plaintiff's credibility, the Commissioner contends that she could reasonably discount the subjective evidence in favor of more objective measures.

According the Commissioner, while plaintiff observes that the ALJ's findings at step three of the sequential evaluation process do not match the state agency psychologist's findings, he has neither explained why this is error nor why any error would be harmful. The ALJ observed that the state agency psychologist noted mild-to-moderate limitations (Tr. 15), but observed that the language from the consultative examiner was somewhat more positive. (Tr. 14-15). The ALJ then expressly stated why he was not adopting the portion of the state agency opinion finding moderate limitations in concentration, persistence, or pace (Tr. 19), so, according to the Commissioner, she clearly met the requirements of § 404.1527(f)(2)(i)-(ii).

Additionally, the Commissioner asserts that plaintiff cannot demonstrate that any difference between the state agency psychologist opinion and the ALJ's RFC finding was of any practical consequence.  The Commissioner explains that the "paragraph B" criteria (which includes the limitation in concentration, persistence, or pace) are used at steps 2 and 3 of the sequential evaluation process and the ALJ and state agency psychologist came to the same conclusion at step 2: that plaintiff had a severe mental impairment.  They also came to the same conclusion at step 3: that plaintiff did not have a mental disorder that met or equaled a listing.  Thus, the Commissioner maintains that no matter which set of "paragraph B" findings are considered, plaintiff did not come anywhere close to meeting a listing (which requires two "marked" limitations or one "marked" limitation coupled with repeated episodes of decompensation).  *See* 20 C.F.R. Subpt. P., Appx. 1, § 12.00 *et seq*.  And, as the ALJ properly noted, the "paragraph B" criteria at steps 2 and 3 are not an RFC finding.  (Tr. 15).  The ALJ's RFC finding was consistent with the state agency psychologist's functional capacity assessment.  Specifically, the state agency psychologist found that plaintiff's "concentration [was] mildly impaired" and that he could handle simple tasks but "may struggle with complex tasks and demanding environments."  (Tr. 250). Thus, the ALJ limited plaintiff to unskilled work, and identified such occupations as machine tender, hand packager, or small

Report and Recommendation
Cross-Motions for Summary Judgment
*McKnight v. Comm'r*; Case No. 11-13376

products assembler.  (Tr. 20-21).  According to the Commissioner, the state

agency psychologist did not say that plaintiff was unable to work in production

positions or in positions requiring quotas.  While the ALJ did not include such a

restriction in her RFC finding either, she expressly noted that the vocational expert

testified that the positions she identified were not production-line positions and

did not require quotas.  (Tr. 21, 51).  The Commissioner contends that it is proper

for this Court to look to the vocational expert's testimony as a whole, especially

where the ALJ made an alternative holding.  *See Smith v. Comm'r of Soc. Sec.*,

1995 WL 469724, at *1 (6th Cir. 1995) (holding that vocational expert's responses

to hypothetical questions not relied on by ALJ are nonetheless substantial

evidence in support of the Commissioner's ultimate conclusion); *Sanders v. Sec'y

of Health & Human Servs.*, 1995 WL 263428, at *2 (6th Cir. 1995) ("Thus, the

[vocational expert] based his testimony on assumptions that fairly described [the

plaintiff's] condition, even though his assumptions were not expressly stated in the

ALJ's hypothetical question.").  The state agency psychologist stated that plaintiff

would "not work well with the public" and "would work best alone or in small

groups."  (Tr. 250).  According to the Commissioner, the ALJ arguably went

further than this, finding that plaintiff should have no public contact and could

only work alone or in small groups.  (Tr. 15).  The state agency psychologist also

affirmed that plaintiff could work "on a sustained basis" and gave credit to the

consultative examiner's opinion, which he characterized as strongly implying "that [plaintiff] could succeed in the workplace." (Tr. 250). According to the Commissioner, these statements are in accord with the ALJ's RFC finding.

The Commissioner disputes plaintiff's claim that the ALJ erred in considering evidence from before the alleged onset date of disability. The regulations define "evidence" very broadly, and direct the Commissioner to develop the claimant's medical history "for at least the 12 months preceding the month in which [the claimant files an] application." 20 C.F.R. §§ 404.1512(a), (d). Thus, the Commissioner contends that the regulations foresee earlier evidence being introduced in some cases. And, the Commissioner argues that plaintiff's counsel expressly waived the opportunity to object to the introduction of the exhibits containing records from 2006 and 2007 and cannot now argue that the admission of the evidence was improper. (Tr. 30); *see Lawson v. Sec'y of Health & Human Servs.*, 688 F.2d 436, 440-41 (6th Cir. 1982) (holding that where the claimant was notified about additional evidence but failed to comment on or object to the evidence, claimant had waived objection to the evidence). Finally, the discussion of plaintiff's pre-onset-date medical records was brief, and the ALJ actually relied on a range of evidence in finding plaintiff not disabled. The ALJ used the prior records to point out inconsistencies in plaintiff's statements (Tr. 17), which the Commissioner asserts is a permissible use of the evidence. And, while

she did note that the 2006-2007 evidence did not "corroborate[]" plaintiff's claim of later disability (Tr. 17), she never stated that they were inconsistent with or detracted from that claim.  The ALJ merely observed that plaintiff was discharged from treatment for noncompliance in 2007 (Tr. 17), but the Commissioner says this is relevant to her discussion of plaintiff's noncompliance during the time period under review, to show that later noncompliance was not an isolated issue. Thus, the Commissioner contends that the ALJ did not base her decision on evidence from 2006 to 2007, but instead properly considered that evidence for context.

The Commissioner acknowledges that plaintiff correctly observes "that there is no requirement that a claimant OBJECTIVELY VERIFY his activities of daily living," Pl. Br. 13 (capitalization in original).  The Commissioner contends, however, that there is also nothing in the regulations that prohibits the ALJ from considering the self-reported nature of these activities.  The Commissioner also asserts that plaintiff's assertion of error suffers from two weaknesses: the ALJ also based her treatment of plaintiff's daily activities on factors other than their unverifiable nature; and the ALJ observed that plaintiff's ability to drive and his ability to care for himself, along with his ability to visit and stay with family and friends, was inconsistent with his claims of seriously impaired daily activities. (Tr. 18).  The Commissioner also points out that whether to believe plaintiff's

self-reported activities hinges on his credibility, which the ALJ had ample reasons to doubt. In particular, she found plaintiff's statements about his daily activities to be "rather vague." (Tr. 18). According to the Commissioner, this finding informs the ALJ's comment that the activities were objectively unverifiable. Thus, the Commissioner urges the Court to reject plaintiff's attempt to take that remark out of context.

The Commissioner next contends that plaintiff's argument that the ALJ's restriction to unskilled work is not sufficient to address his limitations in concentration, persistence, or pace is flawed for several reasons. First, the ALJ expressly found that, based on the vocational expert's testimony, plaintiff could perform the work identified by the expert even if he was precluded from production-rate or quota work. (Tr. 21, 51). The cases identified by plaintiff rely on pace and quota issues to find a limitation to unskilled work insufficient; thus, his argument fails. Second, according to the Commissioner, this is not a case in which plaintiff clearly had moderate limitations in concentration, persistence, or pace. Rather, as the ALJ observed, the consultative examiner did not specify more than a "mild" impairment in concentration in his narrative discussion, and the state agency psychologist also referred to a mild impairment in concentration. (Tr. 19). Under these circumstances, the Commissioner asks the Court to follow the majority line of cases in this district, requiring that plaintiff "explain why the facts

of this particular case require a more detailed hypothetical question to adequately

account for his own moderate limitations in concentration, persistence, or pace."

*See e.g.*, *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375 at *3 (E.D. Mich.

2010).  The Commissioner also points to a line of cases in the Eastern District of

Michigan that have upheld ALJ decisions where a medical professional concluded

that the plaintiff had moderate difficulties in concentration, persistence, or pace,

yet also concluded that the plaintiff could work.  *See e.g.*, *Hicks v. Comm'r of Soc.

Sec.*, No. 10-13643, at 14 & n.3 (E.D. Mich. 2011) (collecting cases); *Taylor v.

Comm'r of Soc. Sec.*, No. 10-12519, at *8 (E.D. Mich. 2011), adopted by 2011

WL 2682892.  According to the Commissioner, plaintiff has failed to explain why

his case is unlike the cases collected by this Court in *Hicks*.

The Commissioner contends that plaintiff cites no authority in support of his

position that "the factors and limitations listed in the Mental Residual Functional

Capacity Assessment should have been included in the ALJ's hypothetical

questions posed to the [vocational expert]."  The Commissioner points to

apparently contrary authority: as the Sixth Circuit explained in *Smith v. Halter*,

307 F.3d 377, 379 (6th Cir. 2001), the ALJ need not include the three broad

"paragraph B" criteria in her question to the vocational expert.  Rather, the ALJ is

responsible for going beyond the "simple" assessment in the "paragraph B"

criteria to develop a complete and accurate assessment of the claimant's mental

impairment.  *Id*.  According to the Commissioner, plaintiff fails to explain why the

ALJ is not required to include the "paragraph B" criteria, which are regulatory

findings, but must include the 20 summary conclusions that are not contained in

the regulations at all.  The Commissioner suggests that plaintiff's argument is

inconsistent with *Infantado v. Astrue*, 263 Fed.Appx. 469, 477 (6th Cir. 2008), in

which the Court rejected the plaintiff's argument that the ALJ failed to incorporate

findings from the summary conclusions form.  In reaching this conclusion, the

court noted the state agency doctor's bottom-line conclusion that the plaintiff

could perform simple tasks on a sustained basis, and observed that the ALJ's

residual functional capacity finding was not inconsistent with that opinion.  *Id*. at

477-78.  Likewise, in this case, the Commissioner urges the Court to conclude that

the ALJ's RFC finding is consistent with the opinion of the state agency

psychologist.

The Commissioner argues that the Court should reject plaintiff's attempt to

rely on evidence submitted to the Appeals Council, which was not presented to the

ALJ because such evidence submitted for the first time to the Appeals Council

cannot be considered by this Court for purposes of substantial-evidence review.

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("[T]his court has repeatedly

held that evidence submitted to the Appeals Council after the ALJ's decision

cannot be considered part of the record for purposes of substantial evidence

review.").  The Commissioner also points out that plaintiff has not requested a

sentence-six remand for new and material evidence, and thus has waived any such

claim.  *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)

("[W]e limit our consideration to the particular points that Hollon appears to raise

in her brief on appeal.").

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions

Plaintiff's primary argument is that the ALJ failed to find, as set forth in the

PRTF, that plaintiff had moderate difficulties in activities of daily living and

concentration, persistence or pace and also failed to accommodate for plaintiff's

moderate difficulties in these areas in his hypothetical questions to the vocational

expert.  While it is true that the ALJ did not strictly adopt the "check the box"

conclusions of the medical expert who completed the PRTF, his conclusions are

entirely consistent with the State Agency Examiner, who conducted a full mental

status examination of plaintiff.  Dr. Rousseau concluded that plaintiff had "mildly

impaired concentration skills," that he was "able to independently engage in a fair

number of adaptive activities of daily living at this time, though self-direction and

attention to self-care appear limited," and the quality of his "peer and supervisor

relationships" was impaired to a moderate extent, although plaintiff appeared

"able to interact adequately in situations where social contact is brief and

superficial."  (Tr. 232).  Dr. Rousseau also concluded that plaintiff appears "able

to attend, comprehend, and follow basic instructions fairly well, and he is likely

able to perform a variety of activities."  *Id*.  A fair reading of Dr. Rousseau's

conclusions suggests that plaintiff was capable of working, but had mild

impairment of concentration, mild impairment of activities of daily living, and a

moderate impairment of social functioning.  The ALJ's findings are also consistent

with the PRTF.  While the medical consultant checked the box for "moderate"

difficulties in maintaining concentration, persistence, or pace, she ultimately

concluded in the mental functional capacity assessment that plaintiff's

concentration was "mildly impaired" and that he may struggle with complex tasks

and demanding environments.  (Tr. 250).  She also ultimately concluded that

plaintiff was moderately impaired in his social functioning and would not work

well with the public.  She suggested that he should work alone or in small groups.

Finally, she concluded that plaintiff retained the capacity to perform simple

routine tasks on a sustained basis.  *Id*.  There is ample support in both opinions to

support the ALJ's conclusions regarding plaintiff's RFC.  *See e.g.*, *Lewicki v.

Comm'r of Soc. Sec.*, 2010 WL 3905375, *3 (E.D. Mich. 2010) ("Plaintiff's

objection ignores a particularly compelling piece of evidence provided by the

same state psychologist who diagnosed Plaintiff's mental limitations in the first

place.  The psychologist diagnosed moderate mental impairments, but also

concluded that Plaintiff's mental limitations would not prohibit him from

performing simple, unskilled work."); *Taylor v. Comm'r*, 2011 WL 2682682 (E.D.

Mich. 2011) ("there is no bright-line rule requiring remand whenever an ALJ's

hypothetical includes a limitation of 'unskilled work' but excludes a moderate

limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision."). Plaintiff simply fails to explain how or why the ALJ's RFC is inconsistent with the expert opinions, other than the "check the box" requirements for the "B" criteria, which the undersigned finds to be an insufficient basis for reversal. Moreover, plaintiff does not point to any contrary opinions in the record suggesting that plaintiff is more limited than as found by the ALJ. Rather, plaintiff merely points to treatment notes discussing plaintiff's symptoms. None of these treatment notes impose any specific limitations on plaintiff's ability to function or work. Thus, in the view of the undersigned, the ALJ's RFC is supported by substantial evidence in the record.

Similarly, plaintiff is confusing the B Criteria used in steps 2 and 3 of the analysis and the RFC assessment. It is well-established that the paragraph B criteria used at steps 2 and 3 of the sequential analysis "are not an RFC assessment." Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p; 1996 WL 374184, at * 4 (SSA 1996). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listings of Impairments." *Id*. at 4;

2:11-cv-13376-VAR-MJH   Doc # 16   Filed 08/03/12   Pg 27 of 32   Pg ID 494

*see also Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (noting that ALJ

properly went beyond a check-the box approach to develop a complete and

accurate assessment of the claimant's mental impairment).

As to the alleged defect in the hypothetical questions, plaintiff offers no

authority in support of his position that the ALJ was required to list all the

summary conclusions from the mental residual functional capacity assessment in

the hypothetical question posed to the vocational expert.  The ALJ included in the

hypothetical question unskilled work that does not require contact with the public,

and that the individual must work alone or small groups.  The vocational expert

testified that there were sufficient jobs in the economy for which plaintiff was

suited.  In addition, plaintiff's counsel posed a second hypothetical, including

these limitations and adding a limitation based on quota-based production

capacity, which the vocational expert indicated would not eliminate any additional

positions.  The ALJ made an alternative finding based on the attorney's

hypothetical.  Given that the ALJ's findings that plaintiff had a mild impairment of

social functioning and mild impairment of concentration, persistence, or pace are

supported by substantial evidence, the hypothetical questions on which the ALJ

based his conclusions constitute substantial evidence.

Plaintiff's objection to the ALJ's consideration of his repeated failure to

comply with treatment as bringing his credibility into doubt is without merit.

Report and Recommendation
Cross-Motions for Summary Judgment
*McKnight v. Comm'r*; Case No. 11-13376

Generally, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). That is not to say, however, that a failure to seek treatment may never be considered. *See Teel v. Comm'r of Soc. Sec.*, 2011 WL 6217424 (S.D. Ohio 2011) (Noting lack of mental health treatment can be appropriate factor). As plaintiff points out, SSR 96-7p generally requires the adjudicator to consider any reasons offered for a failure to seek treatment, including mental illness or a lack of insurance. *See Green v. Comm'r of Social Sec.*, 2008 WL 4449854 at *9 (E.D. Mich. 2008). Plaintiff does not suggest that his mental impairments prevented him from seeking treatment and there does not appear to be any evidence in the record to support this conclusion. Plaintiff claims that the ALJ should have considered financial issues in evaluating his ability to obtain treatment. While it is clear that plaintiff had no income and was homeless, living with friends and moving from place to place, there does not appear to be any specific financial impairment preventing him from obtaining treatment nor did he claim as such at the hearing. None of the treatment notes suggest that plaintiff was not able to get treatment based his lack of income and although it is not entirely clear from the record, it appears that his treatment and medications were provided free of charge. None of the three discharges from treatment suggest that a lack of funds was the problem. Rather, as the Commissioner points out, it was

simply plaintiff's failure to follow through with the treatment plans. Thus, under these circumstances, the undersigned concludes that it was proper for the ALJ to take into account plaintiff's failure to follow through with treatment on several occasions in evaluating his credibility. The undersigned also finds no error in the ALJ's consideration of a discharge from treatment for failing to comply with the treatment program before plaintiff's on-set date was appropriate, given that is established a pattern of behavior in existence even before plaintiff claims that he became disabled.

Despite the ALJ's purported requirement that plaintiff's activities of daily living be "objectively verifiable," the undersigned concludes that the ALJ's credibility analysis of plaintiff's daily activities was, overall, appropriate. First the ALJ pointed out that Dr. Rousseau concluded that plaintiff could engage "in a fair number of adaptive activities of daily living." (Tr. 18). Second, the ALJ found plaintiff's testimony regarding his activities of daily living to be "vague" but it appeared that he could drive, walk, visit with family and friends, and care for himself despite homelessness. According to the ALJ, such a personal history demonstrates that plaintiff has adequate social functioning and the capability of performing a wide variety of activities of daily living. (Tr. 18). The undersigned agrees with the Commissioner that the ALJ's "objectively verifiable" comment was aimed more at the vagueness of plaintiff's testimony than at imposing some

proof requirement.  For example, plaintiff testified:

> Q: What do you do throughout the day?
>
> A: The time I get up -- I mean, 10:00, 11:00. And from
> there, I really don't do nothing, honestly. I get up, and
> the person I live with -- you know, will cook me
> something. Or, I mean, the person I stay with sometimes
> -- I mean -- and I don't know, watch TV. It's I don't
> know what else to -- and then I take a nap later on in the
> day.

(Tr. 37).  Plaintiff's testimony really never became more specific or enlightening

regarding the nature of his daily activities or how they were impaired.  Thus, the

undersigned concludes that the ALJ's conclusion that plaintiff was not credible

based on the "vagueness" of his testimony, his conclusion that there was little

evidence to suggest that any impairment was due to mental illness and not some

other reason, along with the other evidence supporting only a mild impairment of

his daily activities, is supported by substantial evidence despite the use of the

words "objectively verifiable."

    D.   <u>Conclusion</u>

    After review of the record, the undersigned concludes that the decision of

the ALJ, which ultimately became the final decision of the Commissioner, is

within that "zone of choice within which decisionmakers may go either way

without interference from the courts," *Felisky*, 35 F.3d at 1035, and the decision is

supported by substantial evidence.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 3, 2012                         s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on August 3, 2012, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Kenneth F. Laritz, Laura A. Sagolla, AUSA, and the
Commissioner of Social Security.

                                             s/Darlene Chubb
                                             Judicial Assistant
                                             (810) 341-7850
                                             darlene_chubb@mied.uscourts.gov