**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**DUSTIN C. MCKNIGHT,**

     **Plaintiff,**     **CASE NUMBER: 11-13376
                HONORABLE VICTORIA A. ROBERTS**

**v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

     **Defendant.**

_____/

**ORDER**

**I. INTRODUCTION**

   This matter is before the Court on the parties' cross-motions for summary judgment. Magistrate Judge Michael Hluchaniuk recommends that the Court grant Defendant's motion and deny Plaintiff's motion.

   The Court **REJECTS** this recommendation and **GRANTS** Plaintiff's motion for summary judgment to the extent he seeks a remand.  The case is remanded to the Administrative Law Judge ( the "ALJ") for further proceedings consistent with this opinion.

**II. PROCEDURAL HISTORY AND FACTS**

   Plaintiff Dustin McKnight ("McKnight") is thirty-seven years old, with a high school education.  McKnight seeks disability benefits from November 1, 2008 through the present due to anxiety, panic attacks, and bipolar disorder.  He alleges these conditions prevent him from engaging in substantial gainful activity.  McKnight's relevant work history included work as a press operator and flooring installer.

1

McKnight filed an application for disability benefits on April 27, 2009, and an application for Social Security Insurance ("SSI") on July 11, 2009. Both claims were denied on November 23, 2009.

On September 27, 2010, McKnight appeared with counsel before ALJ Teresa Hart, who considered the denial of benefits *de novo*. On January 24, 2011, the ALJ found that McKnight was incapable of performing his previous work as a press operator and flooring installer. However, the ALJ denied benefits, concluding that McKnight could perform a significant number of jobs available in the national economy, and was, therefore, not disabled.

McKnight requested a review of this decision and provided additional exhibits to support his claim. On July 27, 2011, the Appeals Counsel denied the request for review. The ALJ's decision became the final decision of the Commissioner.

On August 3, 2011, McKnight filed suit seeking judicial review of the Commissioner's decision. On August 3, 2012, Magistrate Judge Hluchaniuk recommended that the Commissioner's decision be affirmed. McKnight timely objected to the recommendation and the Commissioner filed a response.

## III.   STANDARD OF REVIEW

The Court will affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Jones v. Comm'r Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (*citing* 42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229

2

(1938)).  Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could also support the opposite conclusion.  *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

This deferential standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  Thus, if the Commissioner's decision is supported by substantial evidence, it must stand, regardless of whether the Court would resolve the disputed facts differently.  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In reviewing the Commissioner's decision, the Court may consider only the record that was before the ALJ, and cannot review the evidence *de novo*, weigh the evidence, or make credibility determinations.  *See id.*

## IV.  ARGUMENT

The Social Security Act provides disability benefits to a wage earner if he establishes that his disability prevents him from performing any substantial gainful activity because of certain medically determinable physical or mental impairments.  42 U.S.C. § 423(d)(1)(A)("The term 'disability' means–inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .").

There are five steps the Social Security Administration uses to determine if a claimant is disabled and eligible for benefits, known as the "five-step sequential evaluation process."  20 C.F.R. § 404.1520.  Plaintiff must establish that: (1) he is not presently

3

engaged in gainful employment; (2) he suffered from a severe impairment; and (3) the impairment met or was medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and was of sufficient duration.  *Id.*  If Plaintiff does not meet his burden at step three, he may still meet this burden at step four by proving he did not have the "residual functional capacity" ("RFC") to perform past work.  *Jones*, 336 F.3d at 474.

If Plaintiff satisfies his burden, the burden shifts to the Commissioner for the fifth step to show there is other work available in the economy that the claimant can perform. *Id.*  "To meet this burden, there must be 'a finding supported by substantial evidence that [claimant] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (*quoting Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 529 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). This evidence may be in the form of Vocational Expert ("VE") testimony, but only if the hypothetical question posed to the expert accurately portrays claimant's individual physical and mental impairments.  *Id.*

A.   **Administrative Record**

A review of the medical evidence and McKnight's testimony contained in the administrative record and presented to the ALJ establishes that McKnight has a long history of mental health issues.  He began treatment at Macomb County Community Health Center ("MCCMH") on April 1, 1998, at the age of twenty-three.  (Tr. at 159, 163).  In October of 2006, McKnight returned to MCCMH and was treated for major depressive disorder and panic disorder.  (Tr. at 145).  MCCMH completed an Annual Assessment.  His doctor reported that McKnight's disability affected his self-direction, activities of daily living, and that these impairments would continue for more than six months.  (Tr. at 157).  McKnight

4

was discharged from MCCMH on July 12, 2007, having made little progress.  His discharge followed his failure to reply to a notice informing him that his case would be closed if no response was received. (Tr. at 147).  The discharge summary says that McKnight was unwilling to continue services and notes that he should call the Access Center if he requires services in the future. (Tr. at 147).

On November 5, 2008, McKnight called MCCMH requesting outpatient services for anxiety and panic attacks. (Tr. at 159).  MCCMH screened McKnight and scheduled an appointment for November 11, 2008 with New Oakland Outpatient.  *Id.*

On November 11, 2008, New Oakland Child-Adolescent and Family Center ("New Oakland Center") evaluated McKnight for depression, anxiety and panic attacks. McKnight's mental status was evaluated as well.  The doctor stated that McKnight had: (1) a very short attention span resulting in "difficulty focusing," (2) a disturbed thought process due to "difficulty concentrating," (3) "short term memory loss," (4) "impulsive" tendencies and (5) impaired insight and judgment due to "poor decision making."  (Tr. at 333).

On December 19, 2008, after McKnight attended roughly eight consecutive treatment appointments, he was hospitalized and treated at the New Oakland Child Adolescent Family Center Freestanding Partial Day Hospital Program ("New Oakland Day Hospital").  (Tr. at 314).  On the assessment the physician noted that McKnight was hospitalized because he was emotionally unstable, he had severe panic attacks, and an increase in symptoms associated with his impairments.  (Tr. at 314).  While hospitalized, McKnight participated in individual and group therapy.  New Oakland Day Hospital kept records of McKnight's group therapy sessions.  As of December 23, 2008, the individual treatment progress summary noted that McKnight "presents as angry and agitated and he

5

has struggled to develop rapport with other group members." (Tr. at 310). A progress summary of December 29, 2008 says that McKnight "becomes isolative when other groups members participate or attempt to provide him with emotional support . . . [and h]e requires constant support and redirection." (Tr. at 311). Additionally, both reports note that McKnight had poor activities of daily living and an unstable living environment. (Tr. at 310, 311).

On December 30, 2008, McKnight was discharged from inpatient treatment, but continued outpatient treatment until December 15, 2009. (Tr. at 303). McKnight was scheduled for sixty eight treatment sessions during his thirteen months at New Oakland Center. Of these, McKnight missed seven. McKnight had a scheduled appointment on December 13, 2009, that he did not attend; but, he did attend his appointment on December 15, 2009. After December 15, 2009, McKnight had one additional scheduled appointment. On December 17, 2009, McKnight did not attend and no further appointments were scheduled.

On March 3, 2010, New Oakland Center discharged McKnight, concluding that he made virtually no improvement; he continued to suffer from extreme anxiety, racing thoughts, panic attacks, anger and mood swings. (Tr. at 253).

On March 25, 2010, McKnight began treatment at Pioneer Counseling Center ("Pioneer") for depression and mood disorder. On May 17, 2010, McKnight withdrew from Pioneer. (Tr. at 340). The records note that McKnight did not show improvement while there, and that he ended in somewhat worse condition than when he began. The records also indicate that McKnight missed several appointments, he was a no show on the last appointment and did not show up for the follow-up appointment.

6

On October 16, 2009, the Commissioner of Social Security referred McKnight to Dr. Michelle Rousseau, a consulting psychologist, for a full mental status exam. (*See* Tr. at 227, 232). Dr. Rousseau had three major conclusions: (1) McKnight could independently engage in a fair number of activities of daily living and follow basic instructions fairly well, but is limited in self-direction and self-care; (2) McKnight's concentration skills appeared mildly impaired, which may make it more challenging for him to meet time constraints and respond to changes in a work setting; and (3) McKnight's "anxiety and emotional distress may impact the quality of peer and supervisory relationships to a moderate extent." (Tr. at 232). Additionally, Dr. Rousseau found that McKnight "did not demonstrate any bizarre behaviors, and did not appear to minimize or exaggerate symptoms." (Tr. at 231).

On November 2, 2009, Dr. Judy Strait, the State Agency consultant, evaluated McKnight. Dr. Strait concluded that McKnight "could succeed in the workplace[;]" but, that: (1) his concentration was mildly impaired; (2) he may struggle with complex tasks; (3) he may struggle in demanding environments; (4) his social functioning was moderately impaired; (5) he would not work well with the public; (6) he would work best alone or in small groups; and (7) he could perform simple tasks on a sustained basis. (Tr. at 250).

At the hearing with the ALJ, McKnight testified that since 1995 he has worked as a flooring installer and as a temporary press operator. (Tr. 35). McKnight was terminated from these positions because he missed work. (Tr. 37). McKnight testified that he has severe anxiety and panic attacks which prevent him from focusing on work and driving. (Tr. 41). McKnight was eventually diagnosed with depression, anxiety and panic attacks as listed in the ALJ's notice of determination or decision.

McKnight has been homeless on and off for the last ten years. He resides with a

close friend when possible.  (Tr. 37).  He testified that about two months before the hearing

with the ALJ, he owned a van that he slept in; but, the van broke down and is currently in

a junkyard.  (Tr. at 38).  He testified that now, he either stays with a friend or, at times, he

does not have a place to stay.  He usually wakes up at 10:00 or 11:00 in the morning.  *Id.*

When he spends the night with his friend she will cook for him.  If he cannot find a place

to stay, he wakes up and walks around.  He has interrupted sleep frequently.

McKnight testified that he suffers from symptoms associated with his anxiety attacks,

such as racing thoughts, sweats and racing heart beats.  (Tr. at 42).  He stated that driving

and being in public places cause him to have panic attacks.  (Tr. at 42).  The attacks vary

in length.  When this occurs, he will lie down if he can, try to talk to his friends, relax and

think about other things or change his environment to relieve the symptoms associated with

the attacks.  He takes Klonopin and Lamotrigine for panic and anxiety attacks.

Additionally, McKnight testified that he suffers from symptoms associated with his

depression.  He states that he usually takes one or two naps during the day that vary from

half an hour to two hours.  He does not have energy and he isolates himself from people.

McKnight also testified that he has mood swings, a hard time concentrating, remembering

what to do, and anger issues.  Stress exacerbates his symptoms, he says.  He takes

Cymbalta for depression and mood swings.

### B.    ALJ's Findings

On September 27, 2010, the ALJ held a hearing on McKnight's disability claims.

She took testimony from McKnight and Gary Senoa, a VE.  McKnight was represented by

counsel.  The ALJ concluded that McKnight was not disabled within the meaning of the Act

and that he was not entitled to benefits.  She conducted the five-step sequential analysis.

8

At step one, she found that McKnight has not engaged in substantial gainful activity since November 1, 2008.  At step two, she concluded that McKnight suffered various severe impairments, including: mood disorder without psychosis, and anxiety disorder with panic attacks.

At step three, the ALJ found that McKnight did not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  At step four, she found that McKnight had the RFC to perform unskilled work at all exertional levels.  But, the ALJ placed limitations on McKnight's ability to perform this unskilled work; she held that he could not have contact with the public and that he must work alone or in small groups.

The ALJ did not credit McKnight's testimony that he was completely unable to work, to the extent that his testimony was inconsistent with his RFC assessment.  The ALJ gave five reasons for discrediting McKnight's testimony: (1) inconsistencies in the record; (2) he failed to follow through with treatment to remedy his illnesses and was discharged from treatment; (3) he complained of pain but his medical test results did not reveal objective evidence of physical limitations; (4) Dr. Rousseau's psychological examination does not support the severity of McKnight's subjective complaints; and (5) McKnight's testimony was vague and not "objectively verifiable."  (Tr. at 16-18).

The ALJ gave weight to Dr. Rousseau and Dr. Strait, the consulting doctors, but did not discuss the opinions of McKnight's treating physicians.  She said that the record did not "contain any opinions from treating physicians indicating that the claimant is disabled or has limitations greater than those delineated in the decision." (Tr. at 19). And, without discussion, the ALJ determined that Dr. Rousseau's opinion was most consistent with the

9

evidence.

After reviewing the record and weighing McKnight's testimony, the ALJ concluded that McKnight had a moderate limitation in social functioning and a mild limitation in concentration. Accordingly, the ALJ found McKnight capable of performing unskilled or simple work in a small group setting or alone.

At step four, the ALJ found that McKnight established he was unable to perform past relevant work, which she found to be light and unskilled. However, at step five, after considering McKnight's age, education, work experience, and RFC, the ALJ concluded there are jobs that exist in significant numbers in the national economy which he can perform. The ALJ relied on the VE's testimony that McKnight could perform occupations such as a machine tender and/or feeder, package handler or products assembler. She found McKnight not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied McKnight's request for review on July 27, 2011. 20 C.F.R. § 404.981.

### C.    Magistrate Judge's Recommendation

The Magistrate Judge recommends that the Court grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. The Magistrate Judge concluded that the Commissioner's decision to deny McKnight's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") was supported by substantial evidence.

First, the Magistrate Judge concluded that substantial evidence supports the ALJ's findings that Plaintiff's impairments were not medically equivalent to those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A. He found that the ALJ's RFC was

10

consistent with the medical opinion of both Dr. Strait and Dr. Rousseau.  The Magistrate Judge also found that McKnight failed to present contrary medical opinions which suggest that the RFC is inconsistent with the medical opinions of Dr. Strait and Dr. Rousseau.  The Magistrate Judge reasoned that the treatment notes that McKnight maintain establish that the RFC is inconsistent with his treating physicians only discuss McKnight's symptoms and do not impose any specific limitation on his ability to work or function.

Second, the Magistrate Judge found that the hypothetical questions posed to the VE were supported by substantial evidence.  He noted that the questions asked by the ALJ may not have been complete; however, the alternative finding by the ALJ based upon McKnight's attorney's question – the question placed a restriction on quota-based production positions – eliminated the possibility of error.

Finally, the Magistrate Judge held that the ALJ did not err in discrediting McKnight. He said the ALJ appropriately took into account McKnight's failure to follow through with treatment in assessing his credibility.  The Magistrate Judge also concluded that the ALJ did not err in considering McKnight's treatment history prior to his on-set date, given that this prior history established a pattern of failure to follow through with treatment. Furthermore, the Magistrate Judge concluded that the ALJ did not err in discrediting McKnight's account of his daily activities because McKnight's account is not "objectively verifiable." He said the ALJ was not imposing a proof requirement in making the assertion; rather, the ALJ simply referenced McKnight's own vague testimony; and thus, the finding is supported by substantial evidence.

### D.    Plaintiff's Objections

Plaintiff asks the Court to reject the Magistrate Judge's recommendation, reverse

11

the Commissioner, grant his motion for summary judgment and award him benefits from his alleged onset date or, in the alternative, remand to the ALJ for further assessment of his mental abilities and functional capacity to perform work in a competitive work setting.

Plaintiff has four objections to the Magistrate Judge's recommendation. First, he says that the Magistrate Judge and ALJ erred when they discounted his credibility because his daily activities cannot be objectively verified. Second, McKnight maintains that the RFC created by the ALJ is not consistent with his treating physicians. Third, Plaintiff says the Magistrate Judge and ALJ erred by not including Dr. Rousseau's complete conclusions in the RFC; therefore, the Magistrate Judge and ALJ erred by failing to include Dr. Rousseau's full conclusion in the hypothetical questions. Finally, McKnight argues that the ALJ and the Magistrate Judge erred in concluding that there was no requirement that the RFC include all the summary conclusions from the mental residual functional capacity assessment.

## V.    ANALYSIS

### A.    The ALJ failed to properly evaluate McKnight's credibility.

McKnight contends that the ALJ erred in finding that his testimony was not entirely credible. McKnight states that the ALJ's credibility determination is not supported by the record and that the ALJ failed to provide a meaningful analysis on how she reached her credibility determinations.

The ALJ noted that McKnight's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but did not credit McKnight's statements regarding the "intensity, persistence, and limiting effects" of his symptoms. The Magistrate Judge found that the ALJ properly discounted McKnight's credibility, given that

12

his records show a history of failing to follow through with treatment. He found the ALJ's reasons were adequately articulated, even if one of the reasons was vague.

This Court finds that the ALJ did not apply the proper legal standard in evaluating McKnight's credibility. "[S]ubjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record." *Jones*, 336 F.3d at 475 (6th Cir. 2003) (*citing Young v. Secretary of HHS*, 925 F.2d 146, 150-51 (6th Cir. 1990)). When assessing a claimant's subjective complaints, the "ALJ may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). An ALJ's credibility determinations about the claimant are to be given great weight. *Walters*, 127 F.3d at 531 (citations omitted). However, the credibility determinations must also be supported by substantial evidence. *Id.*

Social Security Ruling 96-7p sets the standard by which an ALJ must make credibility determinations. *Blakely v. Comm'r Soc. Sec.*, 581 F.3d 399, 406 n. 1 (6th Cir. 2009); 20 C.F.R. § 402.35(b) ("Although Social Security Rulings do not have the same force and effect as statutes and regulations, 'they are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy'. . . ."). Social Security Ruling 96-7p says that an ALJ may not make credibility determinations based upon "intangible or intuitive notion about an individual's credibility. Soc. Sec. Rul. 96-7p, 1996 SSR LEXIS 4 at *3, 1996 WL 374186, at *2 (July 2, 1996). "In making a credibility determination, Social Security Ruling 96-7p, 1996 SSR LEXIS 4 provides that the ALJ must consider the record as a whole, including objective medical evidence; the claimant's statements about symptoms; any statements or other

13

information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence." *Reynolds v. Comm'r of Soc. Sec., 424 Fed. Appx. 411, 2011 WL 1228165, at *2 (6th Cir. 2011) (citing* Soc. Sec. Rul. 96-7p, 1996 SSR LEXIS 4 at *3, 1996 WL 374186, at *2.).  Consistencies between the claimant's symptoms and the varying pieces of evidence should be analyzed. *Rogers v. Comm'r of Soc. Sec.*, 486 F. 3d. 234, 248 (6th Cir. 2007) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.").

Furthermore, pursuant to Social Security Ruling 96-7p, an ALJ "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 SSR LEXIS 4 at *3, 1996 WL 374186, at *2 .  The Sixth Circuit interpreted this requirement to imply that "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F. 3d. at 248.

The ALJ's consideration of McKnight's subjective assertions of the symptoms associated with his disability are not consistent with the Administration's requirements.  The ALJ gives five reasons for her finding that McKnight was not credible.  She points to several purported inconsistencies in the record which she finds do not corroborate McKnight's allegation of severe mental impairment.

But, in outlining these inconsistencies, the ALJ misstates the facts.  The ALJ noted that McKnight claims he first became depressed around the age of twenty-three, in 1998,

14

yet he did not seek treatment until 2003. This is not true. The record reveals that McKnight "has been in and out of MCCMH since 4-1-98." (Tr. at 159). This would substantiate McKnight's claims that he first became depressed and sought treatment when he was twenty-three.

Additionally, the ALJ found that McKnight's subjective allegation is not supported by the evidence given that he has never been psychiatrically hospitalized. Once again, this is a misstatement. On December 19, 2008, McKnight was admitted to New Oakland Psychiatric Hospitalization Program, where he stayed until December 30, 2008.

The ALJ found that McKnight's history of noncompliance with treatment suggests that his symptoms were not as severe as alleged. However, the failure to seek treatment is not determinative in a credibility assessment. *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) (*quoting Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation")); *White v. Commissioner of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir.2009) (*citing Pate–Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)).

Furthermore, before the ALJ weighs this against McKnight, she must consider other explanations for McKnight's behavior. Soc. Sec. Rul. 96-7p, 1996 SSR LEXIS 4 at *22, 1996 WL 374186, at *7 ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."). The ALJ's reasoning is flawed given that she

15

failed to consider other reasons for the missed treatments. *See Pates–Fires*, 564 F.3d at 945. The record is replete with explanations for McKnight's missed treatments. Various physicians note that McKnight was homeless, he did not have a stable home environment, and did not have health insurance. Even when he complied with treatment, doctors saw little progress in his symptoms. Accordingly, the ALJ erred for failing to consider other reasons that would explain McKnight's noncompliance with treatment.

The ALJ concluded that McKnight was discharged from all three of his treating facilities for failing to attend scheduled appointments. This assertion is misleading. While McKnight did not attend some appointments at MCCMH and Pioneer, that is not the case at New Oakland Center. From November of 2008 until December of 2009, McKnight scheduled sixty-eight appointments but failed to attend only seven. Medical records at all treatment facilities indicate that McKnight made very little, if any progress in treatment and, for unspecified reasons he did not continue. Only after McKnight failed to schedule subsequent appointments was he discharged from treatment.

The ALJ goes even further and suggests that the mere fact that McKnight was discharged from the treating facilities meant that his symptoms were not as severe as alleged. However, this finding is both flawed and misstates the facts; McKnight was discharged due to his actions, not because either facility thought it was best that he discontinue treatment.

Discharge records establish that in 2007 at MCCMH, McKnight was unwilling to continue treatment, he showed little progress and it was suggested that he should contact MCCMH with future needs. Discharge records from New Oakland Center establish that although McKnight discontinued treatment, he continued to suffer from extreme anxiety,

16

racing thoughts, panic attacks, anger and mood swings.  Finally, the discharge records from Pioneer establish that when McKnight withdrew from treatment, he was in worse condition at the time of withdrawal, and that he  was depressed, angry, had mood swings and needed continued therapy.  Thus, to the extent the ALJ suggests that McKnight's discharge is reflective of his symptoms, her reasoning is inconsistent with the record.

The ALJ's credibility determination is also based on McKnight's ability to perform some self-care tasks and other activities.  However, this alone is not substantial evidence that McKnight's symptoms are not disabling.  *See* 20 C.F.R. § 404.1572(c) ("Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity."); *Rogers*, 486 F.3d at 248-49 (the minimal daily functions of driving, cleaning an apartment, caring for pets, laundry, reading, exercising and watching the news are not comparable to typical work activities); *Cohen v. Sec'y Dept. Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992) (the fact that disability claimant continued ballroom dancing and attended law school during period for which she claimed disability benefits did not warrant a finding that she could maintain substantial gainful employment).  Furthermore, the ALJ again, mischaracterized the evidence.  *White*, 312 F. App'x at 789 (6th Cir. 2009) (unpublished opinion) (finding that ALJ mischaracterized testimony regarding daily activities).  McKnight testified that he no longer drives because he is afraid of having a panic attack.  McKnight's subjective complaints are consistent with this testimony and with the many examinations he completed as part of his treatment.

The ALJ also bases her credibility determination on Dr. Rousseau's consulting evaluation.  She states that while Dr. Rousseau concluded that McKnight had some

17

deficiencies in social functioning, Dr. Rousseau found he could engage in a fair number of activities of daily living and was capable of brief and superficial contact.  The Sixth Circuit held in *Rogers* that credibility determinations must be reasonable, contain specific reasons for the finding, and be specific concerning the weight given to certain considerations and the reasons for that weight. *Rogers*, 486 F.3d at 249 (finding that weighing one opinion over the other without further discussion is not sufficient to comply with Administrative requirements).

Notably, McKnight's own treating sources say that he has poor activities of daily living.  Additionally, McKnight's own physicians observed him in group settings and found that he becomes isolated, angry, depressed, agitated and struggles to build rapport with others.  The ALJ provides no explanation for affording greater weight to Dr. Rousseau's conclusions.

Finally, the ALJ discounted McKnight's account of his daily activities, indicating that his account was vague and could not be objectively verified.  The Commissioner agreed with McKnight that he was not required to verify his daily activities with objective evidence. The Magistrate Judge concluded that the ALJ did not err in her assessment of McKnight's credibility after finding that the ALJ did not intend to impose a burden of proof on McKnight when she said that McKnight's daily activities could not be objectively verified.  The Magistrate Judge opines that the ALJ was really saying that McKnight could not adequately account for his daily activities to a reasonable degree of certainty.

The ALJ erred.  And, it is not the job of the reviewing court to determine what the ALJ really intended to say.  Rather, as stated in Social Security Ruling 96-7p, the ALJ "must be sufficiently specific" in her reasons, weight and the reasons for that weight.  Soc. Sec.

Rul. 96-7p, 1996 SSR LEXIS 4 at *3, 1996 WL at *2.  Here, the ALJ failed to abide by this standard.

Although credibility determinations regarding subjective complaints rest with the ALJ, the ALJ's decision must 'contain specific reasons for the finding on credibility, supported by the evidence in the case record'" and must be "'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to [McKnight's] statements and the reasons for that weight.'" *Rogers*, 486 F.3d at 248-49 (*quoting* Soc. Sec. Rul. 96-7p, 1996 SSR LEXIS 4 at *12, 1996 WL 374186, at *4).

The reasons given here are not sufficiently specific.  On remand, the ALJ must reevaluate McKnight's credibility with respect to his subjective complaints of symptoms related to his impairments in accordance with this opinion.

**B.      The ALJ erred because she failed to evaluate or weigh the opinions of treating physicians**.

McKnight argues that the ALJ failed to consider and weigh the opinions of his treating medical doctors and thus, the ALJ's step three findings, RFC and hypothetical questions posed to the VE are not supported by substantial evidence.  The ALJ said that the record did not contain any opinions from treating physicians indicating that the claimant is disabled or has limitations greater than those delineated in the decision.  (Tr. at 19).

The Magistrate Judge found this conclusion supported by the record. The Magistrate Judge observed that none of the treatment notes in the record imposes a limitation on McKnight's ability to function or work.

The ALJ erred in not considering and weighing the opinions of McKnight's treating physicians.  20 C.F.R. § 404.1527 governs how an ALJ evaluates medical opinion

19

evidence.  Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions."  *Id.* § 404.1527(a)(2). An ALJ is required to evaluate every medical opinion, regardless of its source.  *Id.* § 404.1527(d).  A treating physician's medical opinion is given controlling weight if the ALJ finds that the opinion on the nature and severity of the claimant's impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *Id.* § 404.1527(d)(2).

There are several opinions other than those of consulting doctors.  For example, McKnight was hospitalized in December of 2009 for symptoms associated with his impairments.  During inpatient treatment, McKnight participated in group therapy.  There are records which describe McKnight's inability to function around others.  Furthermore, those records note McKnight's need for constant redirection and support.  An examining doctor at New Oakland Center concluded that McKnight suffered from short term memory loss, impulse control disturbance, and that he had a very short attention span which resulted in difficulty focusing.  Throughout the record, physician notes indicate that McKnight has an increase in angry spells, his appearance is flat, that he continues to struggle with panic attacks, and many more findings.  These observations should have been addressed by the ALJ.

An ALJ must consider several factors when deciding what weight to assign a treating source's medical opinion when he does not assign it controlling weight.  *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 993 (N.D. Ohio 2003).  Pursuant to 20 C.F.R 404.1527

20

these factors include: (1) length of the treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) specialization of the treating source. *Id.* §§ 404.1527(d)(2)-(6), 416.917. Social Security Ruling 96-2p explains that these regulations "require[ ] that the adjudicator will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9, at *11, 1996 WL 374188, at * 5 (July 2, 1996). "[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

To the extent that any of the physicians who cared for McKnight are treating sources, the ALJ failed to consider the § 1527(d)(2) factors. The ALJ overlooked a mandatory procedural protection; this was reversible error. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 542, 546 (6th Cir. 2004) (reversing an ALJ's disability determination where the ALJ did not explain his application of the factors listed in § 1527(d)(2) before rejecting the opinion of the claimant's treating physician); *Blakely*, 581 F.3d at 409 (concluding a failure to identify and discuss the 1527(d)(2) factors when weighing treating source evidence was not harmless error because it was not clear that the ALJ recognized and evaluated the treating relationships of certain doctors with the claimant and the doctors' opinions were not patently deficient). The ALJ implicitly rejected all of McKnight's treating sources' opinions by noting that their opinions were not more restrictive than the consulting

21

doctors. She thus gave greater weight to the consulting doctors. The ALJ failed to consider any of the other factors before assigning "no weight" to the treating physicians' observations. More importantly, and as discussed below, the ALJ's opinion on the supportability and consistency of these medical opinions is not supported by substantial evidence and her decision does not provide "good reasons" for rejecting McKnights's physicians' medical opinions in light of his diagnoses.

The *Blakely* court observed that treating source medical opinions are entitled to deference, even when not controlling. *Blakely,* 581 F.3d. at 408 ("Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."); *see also Rogers*, 486 F.3d at 242 ("[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding."). The ALJ should generally give more weight to these opinions, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).

The same reasoning applies here. The record shows that McKnight sought treatment at three different facilities over four years. He began treatment at MCCMH in 1998, he attended sixty-one appointments at the New Oakland Center, and seven at Pioneer. These ongoing relationships should have been considered by the ALJ. On remand, the ALJ must properly weigh all of the § 1527(d)(2) factors when evaluating the medical opinions concerning McKnight's functional limitations. Opinions from non-treating

sources are evaluated under a similar rubric pursuant to § 1527(d)(1), (3)-(6); the ALJ simply considers the "[e]xamining relationship" instead of the "[t]reatment relationship."

Even if the ALJ concludes that the medical opinions of McKnight's own physicians are not treating sources or treating physicians, at minimum, they are examining physicians. An examining physician's medical opinion is entitled to greater deference than a non-examining source, such as the Department of Disability Service consultants. 20 C.F.R. § 404.1527(d)(1). Although the ALJ acknowledged the diagnoses and deemed the diseases a "severe impairment" at step two, when assessing McKnight's RFC she failed to discuss the weight she assigned to any of McKnight's own treating physicians.

Because the ALJ implicitly rejected the opinions of McKnight's own treating physicians that he suffered from continuing depression, severe panic attacks, outbursts, social anxiety, mood swings and several debilitating symptoms related to his impairments, steps three, four and five, are not supported by substantial evidence. The ALJ's reassessment of McKnight's RFC on remand must classify and give appropriate weight to each of these opinions in the record.

**C.** **The RFC could have been more accurate given that the ALJ did not include Dr. Rousseau's complete statement; but, the alternate hypothetical posed to the VE on cross examination eliminates this inaccuracy.**

McKnight says the ALJ should have considered Dr. Rousseau's complete statement when determining his RFC. McKnight argues that the hypothetical questions posed to the VE are not supported by substantial evidence given that the RFC is incomplete. The ALJ states that she gave greater weight to Dr. Rousseau's findings than Dr. Strait but fails to state why she did not adopt Dr. Rousseau's statement in its entirety. The Magistrate Judge found that the RFC was not incomplete but concluded, in the alternative, that McKnight's

23

questions posed to the VE cured any defect in the hypothetical questions because the ALJ made an alternative finding based upon the attorney's hypothetical.

The RFC could have been more accurate. A claimant may challenge the denial of his benefits if he believes that the ALJ erroneously determined his RFC. *Webb v. Comm'r Soc. Sec.*, 638 F.3d 629, 632 (6th Cir. 2004). Under 20 C.F.R. § 404.1545 RFC is a claimant's impairments, and any related symptoms, such as pain, that may cause physical and mental limitations and which affect what claimant can do in a work setting. As explained by the Sixth Circuit in *Howard*, an RFC is an evaluation of what a claimant "can and cannot do, not what he does or does not suffer from.*" Howard v. Comm'r Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

Ultimately, the ALJ and not a physician determines a claimant's RFC. 42 U.S.C. § 423(d)(5)(B); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) (unpublished) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."); 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge. . . is responsible for assessing your residual functional capacity."). However, when determining a claimant's RFC, The ALJ must review a claimant's entire record. *See Webb*, 368 F.3d at 632; *see also* 20 C.F.R. § 404.945 ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe,". . . based on all of the relevant medical and other evidence . . . We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations.").

24

The RFC states "the claimant is limited to the performance of unskilled work. This work must involve no contact with the public and it must allow the claimant to work alone or in small groups." (Tr. at 15). The medical opinion which McKnight argues should have been included in the RFC in its entirety is that McKnight's "concentration skills appear at least mildly impaired which may make it more challenging for him to meet time constraints and respond to changes in a work setting." (Tr. at 232). McKnight argues that the RFC is incomplete because it does not include this limitation as noted by Dr. Rousseau. Because the ALJ did not include Dr. Rousseau's complete finding, or a discussion of why she omitted the explanatory portion of Dr. Rousseau's conclusion, the Court believes the RFC could have been more accurate.

However, not all inaccurate RFCs justify a finding that the RFC is not supported by substantial evidence. In *Howard*, the Sixth Circuit concluded that a RFC could "have been more accurate[,]" but was supported by substantial evidence, even though the RFC states the claimant is "able to squat and climb stairs" but the treating physician's report noted "that it is harder for Howard to squat and climb when her low back pain is significant." *Howard,* 276 F.3d at 239 (internal citations omitted). In *Howard*, the physician did not specifically say that the claimant could not walk and climb, the physician just explained that at times it may be more difficult for Howard to walk and climb. *See id.* The ALJ's conclusion that Howard could walk and climb was supported by the physician's opinion.

McKnight can be distinguished from *Howard.* Here, the ALJ's conclusion, that McKnight is limited to unskilled work, is not consistent with Dr. Rousseau's conclusion that McKnight's concentration skills "may make it more challenging for him to meet time constraints and respond to changes in a work setting." (Tr. at 232). Furthermore, there is

25

no evidence that the ALJ even considered Dr. Rousseau's complete conclusion; as an examining physician, Dr. Rousseau's opinions are entitled to weight. 20 C.F.R. § 404.1527(d)(1). Therefore, the RFC is incomplete.

McKnight argues that because the RFC is incomplete, the hypothetical questions posed to the VE are not supported by substantial evidence. The ALJ made an alternative finding that there were jobs in the national economy that McKnight could perform due to his stress restrictions. The Magistrate Judge concluded that if there was error in the hypothetical questions posed to the VE by the ALJ, due to an incomplete RFC, the attorney's hypothetical question eliminated the error.

This Court agrees. The VE expert testimony is based on the claimant's "residual functional capacity and . . . age, education, and work experience" and assesses whether the claimant "can make an adjustment to other work." *Webb*, 368 F.3d at 633 (*quoting* 20 C.F.R. § 416.920(A)(4)(v)). An attorney may forfeit an argument that the hypothetical question did not describe the vocational impact of the claimant. *Furst v. Commissioner of Soc. Sec.*, No. 99-3581, 2000 U.S. App. LEXIS 4174, 2000 WL 282909 at *2 (6th Cir. Mar. 13, 2000) (finding that "Furst has forfeited this argument because her attorney posed a hypothetical question to the VE which contained precisely the same restrictions with regard to this need.").

During the hearing, McKnight's attorney asked the VE "If due to stress problems, a person would be able to work in a production capacity where a quota would need to be maintained, would that eliminate the press operator position." (Tr. at 51). The VE responded, "No." *Id.* A job that has a quota restriction would encompass Dr. Rousseau's conclusion that McKnight may have challenges meeting time constraints and responding

26

to changes.  Thus, there is no error in the hypothetical questions posed to the VE.

**D.     There is no requirement that a hypothetical question posed to a VE list all of the RFC findings.**

McKnight's final objection is that the hypothetical question is incomplete because it does not list all the limitations noted in the RFC.  The ALJ did not list all of the RFC findings; rather, she structured the hypothetical questions to encompass the relevant RFC conclusion.  The Magistrate Judge  found that McKnight did not provide legal support for his argument; and thus, did not address the issue.

The ALJ did not err.  In *Walker v. Astrue*, the district court found that "a hypothetical question need only reference a claimant's limitations - not provide a listing of all the claimant's medical impairments." *Walker v. Astrue*, No. 3:11–cv–142,  2012 WL 3187862, at *5 (S.D. Ohio Oct. 8, 2010) (*citing Webb*, 368 F.3d at 633)).

This Court agrees that the hypothetical question posed to the VE  is not required to include a list of all of the RFC findings.

**VI.     CONCLUSION**

The Commissioner's determination of disability is not supported by substantial evidence.   The Court **REJECTS** the Magistate Judge's recommendation; **GRANTS** Plaintiff's motion for summary judgment to the extent he seeks a remand; and **REMANDS** the case for reconsideration consistent with this opinion.

       **IT IS ORDERED.**

                                    S/Victoria A. Roberts
                                    Victoria A. Roberts
                                    United States District Judge

Dated:  September 10, 2012

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 10, 2012.

S/Linda Vertriest
Deputy Clerk